UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DERYCK HUELETT                                                                    Plaintiff

v.                                                              Civil Action No. 3:23-cv-00420

LOUISVILLE PAVING COMPANY, INC                                          Defendant

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Defendant Louisville Paving Company, Inc. ("Louisville Paving") moves for Summary Judgment on all claims. [DE 24]. Defendant Deryck Huelett ("Huelett") responded [DE 30] and moves to exceed the page limit for his response [DE 29]. Louisville Paving replied [DE 36] and responded to the motion to exceed [DE 33]. These matters are ripe. For the reasons below the Court **GRANTS** Huelett's Motion for Leave to File Excess Pages, and **GRANTS** Louisville Paving's Motion for Summary Judgment on all counts.

## I.       BACKGROUND

Louisville Paving Company hired Huelett as a laborer on October 4, 2021. [DE 24 at 160; DE 24-1 at 198]. Huelett experiences infrequent panic attacks that may occur anywhere from once a year to five or six times a year. [DE 24-1 at 194]. Huelett never formally disclosed his panic attacks to Louisville Paving, but several months prior to the date of the events at issue a supervisor, Justin Flowers, and team safety member, Lisa Neal, observed Huelett having a panic attack. [Id. At 189-190]. These panic attacks last a few minutes and manifest themselves as a jabbing pain and shortness of breath. [*Id*. at 192]. Huelett does not take medicine for these attacks. [*Id*. at 195].

On May 2, 2022, Huelett reported to work at Louisville Paving's Terra Crossing worksite. [DE 24 at 15-160]. Huelett had two firearms in his car that day and routinely kept firearms in his

car. [DE 1-2 at 10]. While on his lunch break Huelett spoke with his wife on the phone and the two argued about his 401-k withholding. [DE 24-1 at 188]. This led Huelett to call Louisville Paving's HR Specialist Clay Hoppe ("Hoppe"). [DE 24-3 at 235]. On the call Huelett was breathing heavily and sounded distressed. [*Id*. at 236]. Concerned, Hoppe called Alex Keller ("Keller"), a manager who was not on cite at the time. [*Id*]. Keller tried to call several supervisors before calling Matt Lewis ("Lewis"), a laborer on site, to check on Huelett. [*Id*.].

Lewis found Huelett in his car crying and hyperventilating and attempted to calm him down. [DE 24-2 at 219]. Huelett's wife called twice while Lewis was trying to calm Huelett down. [*Id*. at 220]. Lewis answered both times and explained the situation to Huelett's wife. [*Id*.]. After the second call Lewis contends that Huelett said, "maybe it would be better if I was not around," and "maybe I should just end it." [*Id*.]. Shortly after making these statements Huelett reached his right hand into the cubby of his car and pulled a handgun out by the handle. [*Id*. at 227; DE 24-1 at 212]. Lewis reached into the car and pinned Huelett's right wrist to the center console of the car and told Huelett to drop the firearm. [*Id*. at 229-30]. Huelett held onto the firearm for thirty to forty seconds before releasing it. [DE 24-2 at 230]. Lewis then took the firearm. [*Id*.].

During this incident a foreman, Blake Cundiff ("Cundiff") and Louisville Paving's safety specialist James Bentley ("Bentley") arrived on scene. [DE 24 at 161]. Cundiff called EMS to check on Huelett. [DE 24-5 at 252]. When EMS arrived and evaluated Huelett they found he had an elevated heartrate and encouraged him to come with them to the hospital for further assessment. [DE 24-1 at 205]. Huelett initially resisted and told EMS that he was fine but agreed to go to the hospital with EMS about an hour later. [*Id*. at 206]. Huelett was no longer having trouble breathing at this point. [*Id*.]. Before Huelett left with EMS, Bentley asked for the keys to Huelett's car so

Louisville Paving could move it inside the gate at the job cite to protect it from break-ins or theft. [*Id*. at 208]. Huelett then gave Bentley his keys and left with EMS. [*Id*.].

Huelett was taken to Norton Brownsboro Hospital where he told doctors he had a panic attack and "mentioned something about 'ending it' during the panic attack." [DE 24-8 at 267-68]. Huelett repeated this later during a psychological evaluation. [*Id*.]. While Huelett was at Norton, Bentley secured Huelett's car at the site and met Huelett's wife at a gas station to give her Huelett's firearms. [DE 24-7 at 264]. Huelett was discharged that night and called Bentley who picked him up and took him to his car. [DE 24-1 at 209]. The next day, Louisville Paving fired Huelett. [*Id*. at 212]. Huelett was told that he was fired because of concerns that he would hurt himself or his coworkers. [*Id*. at 213]. The day following Huelett's firing, on May 4, 2022, ammunition that had been removed from his gun was returned to him. [*Id*. at 286].

Huelett originally brought these claims as two separate suits in Jefferson Circuit Court. [DE 1-12 at 102]. The first complaint was filed on January 18, 2023, and the second on July 24, 2023. [*Id*.]. The two suits were consolidated and transferred to Division Ten of the Jefferson Circuit Court on August 7, 2023. [DE 1-13 at 111]. The case was removed to the Western District of Kentucky under federal question jurisdiction on August 11, 2023. [DE 1-14 at 112]. Huelett brings four claims against Louisville Paving; Count One, Violation of Ky. Rev. S. 237.106, Count Two, disability discrimination under the Americans with Disabilities Act ("ADA") and Kentucky Civil Rights Act ("KCRA"), Count Three, retaliation under the ADA and KCRA, and Count Four, trespass to chattels.

## II.    MOTIONS FOR LEAVE TO FILE EXCESS PAGES [DE 29]

Huelett filed a forty-three-page brief of almost 14,000 words in response to Louisville Paving's Motion for Summary Judgment. [DE 29]. In support, Huelett filed a request to exceed

the twenty-five-page limit Local Rule 7.1 sets for response filings, asserting that the additional pages are necessary because of the number of issues raised in summary judgment that require extensive briefing. [DE 29]. The Court is skeptical that good cause exists for an extension to this response, let alone such an extensive one. However, for purposes of efficiency, and because the extended page count does not change the results or prejudice the movant in this matter, the Court will **GRANT** Huelett's motion to exceed the page limit under Local Rule 7.1.

### III.    SUMMARY JUDGMENT ANALYSIS [DE 24]

#### A.    Summary Judgment Standard

Under Federal Rule Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986*)*. The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party can meet its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(b).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586*.* Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (internal quotation marks omitted)). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## B.    Self-Serving Affidavits

Generally, "[a] party cannot create a factual dispute by filing an affidavit, after a motion for summary judgment has been made, which contradicts earlier testimony." *Dotson v. U.S. Postal Serv.*, 977 F.2d 976, 978 (6th Cir. 1992) (*per curiam*) (citing *Gagne v. Nw. Nat. Ins.*, 881 F.2d 309, 315 (6th Cir. 1989)); *see also Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984). "If a witness, who has knowledge of a fact, is questioned during her deposition about that fact, she is required to 'bring it out at the deposition and [cannot] contradict her testimony in a subsequent affidavit.'" *Holt v.*

*Olmsted Twp. Bd. of Trustees*, 43 F. Supp. 2d 812, 817 (N.D. Ohio 1998) (quoting *Reid*, 790 F.2d at 460). Put differently, "a party cannot avoid summary judgment through the introduction of self-serving affidavits that contradict prior sworn testimony." *U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 303 (6th Cir. 1998). Numerous courts have declared that self-serving affidavits without factual support in the record will not defeat a motion for summary judgment. *See, e.g., Devine v. Jefferson Cnty., Kentucky,* 186 F. Supp. 2d 742, 744 (W.D. Ky. 2001), *aff'd*, 40 F. App'x 924 (6th Cir. 2002); *Jadco Enterprises, Inc. v. Fannon*, 991 F. Supp. 2d 947, 955 (E.D. Ky. 2014); *Syvongxay v. Henderson*, 147 F. Supp. 2d 854, 859 (N.D. Ohio 2001); *Wolfe v. Vill. of Brice, Ohio*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999) ("Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). Such affidavits fail to create an issue of material fact. *Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003).

Huelett's affidavit [DE 30-1] was not filed until after Louisville Paving moved for summary judgment. To the extent that Huelett's affidavit directly contradicts his prior deposition or creates a dispute of fact where none existed before, it cannot suffice to survive summary judgment.

## C.      Count One: Violation of Ky. Rev. Stat. § 237.106

Huelett alleges that Louisville Paving violated Ky. Rev. Stat. § 237.106 - Right of employees and other persons to possess firearms in vehicle -when he was fired for exercising his right to possess a firearm in his vehicle at work. [DE 1-2 at 13]. Louisville Paving argues that Huelett did not merely possess the firearm but handled it in front of coworkers shortly after talking about "ending it all." [DE 24 at 179]. Under Kentucky law, an employer may ordinarily "discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally

indefensible." *Grzyb v. Evans*, 700 S.W.2d 399, 400 (Ky. 1985). However, Kentucky law does provide some statutory exceptions to at will employment, including protections for possession of a firearm under Ky. Rev. Stat. § 237.106. *Holly v. UPS Supply Chain Sols., Inc.*, 163 F. Supp. 3d 465, 468 (W.D. Ky. 2016), *aff'd*, 680 F. App'x 458 (6th Cir. 2017).

> Ky. Rev. Stat. § 237.106 provides that
>
> (1) No person, including but not limited to an employer, who is the owner, lessee, or occupant of real property shall prohibit any person who is legally entitled to possess a firearm from possessing a firearm, part of a firearm, ammunition, or ammunition component in a vehicle on the property.
>
> (2) A person, including but not limited to an employer, who owns, leases, or otherwise occupies real property may prevent a person who is prohibited by state or federal law from possessing a firearm or ammunition from possessing a firearm or ammunition on the property.
>
> (3) A firearm may be removed from the vehicle or handled in the case of self-defense, defense of another, defense of property, or as authorized by the owner, lessee, or occupant of the property.

Ky. Rev. Stat. § 237.106. Thus, Ky. Rev. Stat. § 237.106 protects the right of lawful firearm owners to store firearms in their personal vehicle at work. But, if the employee removes or handles the firearm for a reason not delineated in § 237.106(3), his employer is free to take disciplinary action. *Holly,* 163 F. Supp. 3d at 471–72. The statute specifically contemplates situations where "an actor removes the gun from the vehicle *or handles* the gun." *Korb v. Voith Indus. Servs., Inc.*, No. 3:12-CV-00222-H, 2012 WL 7062365, at *2 (W.D. Ky. Nov. 28, 2012) (emphasis added) (holding that a dispute over whether the plaintiff removed the firearm from his vehicle or merely handled it was inapposite as the statute specifically provides for both situations). As such, an employer may take disciplinary action if an employee handles their firearm on work property, even if it remains within their vehicle, so long as it is for a reason other than one of the four approved situations listed in Ky. Rev. Stat. § 237.106.

In his response, Huelett argues that the evidence is unclear as to whether he handled the firearm or merely stored it in his car, creating a material dispute of fact. [DE 30 at 332]. However, multiple witnesses provided testimony that Huelett handled or brandished his firearm. [DE 24-2 at 227; DE 24-1 at 212]. Lewis stated that Huelett grasped the firearm by the handle and "brought it across his lap" before Lewis pinned Huelett's wrist and the firearm to the console for thirty to forty seconds before he released it. [DE 24-2 at 227-30]. Several points in Huelett's own deposition show that he handled the firearm, for instance Huelett testified "I went right from my passenger seat going right up underneath to put it up underneath my seat" and confirmed Lewis' testimony that "[Lewis] goes to grab [the firearm]." [DE 24-1 at 212, 216]. When asked if he was moving the gun from the passenger seat to under his seat, Huelett confirms, saying "Right, right." [*Id*.]. This is further supported by the testimony of coworkers [DE 31-2 at 425] and medical records which show that Huelett stated "his coworker then saw him putting the guns back under his seat." [DE 34-9 at 269]. The handling was also not brief or incidental, Huelett pulled the firearm across his chest and after he was asked to release the firearm by his coworker it took him thirty to forty seconds to release it. [DE 24-2 at 230]. This handling of the firearm was also exacerbated by the alarming statements about "ending it" made by Huelett immediately before handling the firearm. [*Id*. at 220; 31-1 at 400]. There is no genuine dispute of fact on this issue, and the record reflects that Huelett handled his firearm outside of one of the four protected purposes under Ky. Rev. Stat. § 237.106.

Questions of whether Huelett was aware of Louisville Paving's firearm policy and whether the policy is overbroad are irrelevant. At will employment is the rule of law in Kentucky. *Miracle v. Bell County Emergency Med. Services*, 237 S.W.3d 555, 558 (Ky. App. 2007). Ky. Rev. Stat. § 237.106 provides specific protections for firearms stored in cars or handled at work and cites

four narrow purposes, nothing more or less. The only relevant question is whether Huelett's conduct was protected by Ky. Rev. Stat. § 237.106 at the time such that an otherwise lawful at will firing was unlawful. Because this Court has already decided Huelett's conduct was not protected, Louisville Paving was within its rights to fire him for inappropriately handling his firearm regardless of any corporate policy or Huelett's knowledge of such.

The Court finds that there is no genuine dispute of material law as to Huelett's handling of a firearm for purposes other than those permitted by Ky. Rev. Stat. § 237.106. As a result, Huelett's conduct is not protected by Ky. Rev. Stat § 237.106 and his claim fails. Louisville Paving's Motion for Summary Judgment is **GRANTED as to Count One**.

D.    **Count Two: Disability Discrimination under the ADA and KCRA**

"Because the language of the KCRA mirrors that of its federal counterpart, courts interpret the KCRA consistently with federal anti-discrimination law." *Brown v. Humana Ins*., 942 F. Supp. 2d 723, 730 (W.D. Ky. 2013) (citing *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) and *Brohm v. JH Props., Inc*., 149 F.3d 517, 520 (6th Cir. 1998)). "Accordingly, the Court will analyze this . . . claim under the framework provided by the [ADA]." *Id*.

Discrimination claims can be based on either direct evidence, or circumstantial evidence of disparate treatment. A*llen v. Highlands Hosp. Corp*., 545 F.3d 387, 394 (6th Cir. 2008) "[D]isparate treatment arises from employees treat[ing] some people less favorably because of their . . . [protected characteristics]" and "require[s] a plaintiff [to] show proof of intentional discrimination." *Tchankpa v. Ascena Retail Grp., Inc*., 951 F.3d 805, 818 (6th Cir. 2020) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) and *Anderson v. City of Blue Ash*, 798 F.3d 338, 363–64 (6th Cir. 2015)) (internal quotation marks omitted); *see also O'Donnell v. Univ. Hosps. Cleveland Med. Ctr*., 833 F. App'x 605, 619 (6th Cir. 2020) ("Disparate treatment and

retaliation claims are indirect-evidence claims based on circumstantial evidence where the determinative issue is the employer's intent.").

A disparate treatment claim is "evaluated under" the *McDonnell Douglas* "burden-shifting framework*." O'Donnell*, 833 F. App'x at 619 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). That framework requires:

> In order to establish a prima facie claim of disparate-treatment disability discrimination under the ADA, [Lemieux] must show that 1) she was disabled; 2) she was otherwise qualified for the job, with or without reasonable accommodation; 3) she suffered an adverse employment decision; 4) her employer knew or had reason to know of her disability; and 5) similarly situated employees were treated more favorably.

*Id*. (citing *Rosebrough v. Buckeye Valley High Sch*., 582 F. App'x 647, 651 (6th Cir. 2014)). Because the *McDonnell Douglas* framework applies to disparate treatment claims for multiple types of discrimination, courts often look to how the framework is applied in one context to determine its application in another. *See, e.g., Waggoner v. Carlex Glass Am*., LLC, 682 F. App'x 412, 415 (6th Cir. 2017) (citing *Wright v. Murray Guard, Inc*., 455 F.3d 702, 710 (6th Cir. 2006), which dealt with sex discrimination, to resolve an ADA claim); *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 945 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018) (citing *Key v. Cincinnati Hamilton Cty. Cmty. Action Agency*, No. 1:09–CV–139, 2011 WL 4543892, at *10 (S.D. Ohio 2011), which dealt with race and age discrimination, to resolve an ADA claim).

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Bledsoe v. Tennessee Valley Auth. Bd. of Directors*, 42 F.4th 568, 580 (6th Cir. 2022) (cleaned up). "Discriminatory remarks, however, are direct evidence of discrimination only when they come from a supervisor with at least a meaningful role in the decision making process." *Id*. at 581 (internal quotation marks and citation omitted). When "multiple persons with various

degrees of influence participated in the ultimate decision," a supervisor's statements "do not compel a discrimination finding" because" a jury would have to take inferential steps to determine the scope of [the supervisor's] role in that decision." *Id*. see W*eigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 382 (6th Cir. 2002) ("It is well established that isolated and ambiguous comments are not sufficient to make out a direct-evidence case of employment discrimination."). Direct evidence claims can also include mixed-motive claims where an employer presents direct evidence that "the employer considered impermissible factors when it made the adverse employment decision at issue." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 572 (6th Cir. 2003). Direct evidence and disparate treatment claims are mutually exclusive, as such a mixed-motive analysis is not warranted if a plaintiff fails to meet their burden to offer direct evidence. *Id*. at 585.

### 1. Direct Evidence of Discrimination

Huelett alleges that comments made before and after his firing provide direct evidence of discrimination to forego the *McDonnell Douglas* framework and apply the standard under a direct evidence discrimination claim, as well as a mixed motive claim. [DE 30 at 340]. Huelett points to several statements to support this contention.[1]  This includes comments from managers such as Keller and Kurt Krug ("Krug") calling his situation "really sad," discussing more mental health awareness in the workplace, inquiring about whether Huelett was getting help for himself, and the statement that "[Huelett] still thinks that he doesn't need to seek any professional help for his condition." [DE 30 at 340]. "Direct evidence is evidence that proves the existence of a fact *without requiring any inferences*." *Bledsoe*, 42 F.4th at 580 (Emphasis added). None of the comments are

---

[1] Fed. R. Civ. P. 56 requires that parties must support their assertions by "citing to particular parts of materials in the record." Huelett does not provide the court with citations to the quotes used to support his assertions. The Court searched the record and located the quotes at issue and considered them, but Huelett is advised to cite to the record in the future.

negative, none of the comments state that Huelett was fired for his disability, and none reference his firing except to note that it was "really sad." [*Id*]. "Only the most blatant remarks, whose intent could be nothing other than to discriminate" satisfy direct evidence. *Sharp v. Aker Plant Servs. Grp., Inc.,* 726 F.3d 789, 798 (6th Cir. 2013). These remarks are insufficient to satisfy the standard of direct evidence as none prove discrimination without making significant inferences. The Court must proceed under the *McDonnell Douglas* framework and any arguments as to direct evidence, including mixed motive analysis, fail.

### 2. *McDonnell Douglas* Test: Prima Fascia Case

Huelett alleges that Louisville Paving fired him for having panic attacks and thus discriminated against him due to a perceived impairment to a major life activity; breathing. [DE 1-2 at 13]. In the alternative, Huelett alleges discrimination based on an actual disability. [*Id*.]. Louisville Paving makes several arguments for summary judgment as to Count Two. First, Louisville Paving argues that Huelett cannot meet the prima fascia burden as he is not disabled under the KCRA, ADA, or the 2008 Amendments to the Americans with Disabilities Act ("ADAAA"), and that they did not know or have reason to know of his disability. Second, Louisville paving argues that even if the prima fascia case is met, they have a legitimate nondiscriminatory reason for firing Huelett given his brandishing of a firearm at work, and there is no evidence of this being mere pretext. The Court need not address the uncontested elements of a prima fascia case or the failed arguments of mixed motive analysis.

### i. *Huelett's Disability Status*

Huelett alleges that his panic attacks constitute a disability that is afforded protection under the ADA, ADAAA, and KRCA. Under the first prong of the ADA's definition of disability, Huelett must show not only that he actually has a mental impairment but also that the "impairment

substantially limit[ed] one or more major life activities." *Williams v. AT&T Mobility Servs., LLC*, 186 F. Supp. 3d 816, 823 (W.D. Tenn. 2016) (citing 29 C.F.R. § 1630.2(j)(1)(ii)). The ADA, as amended by the ADAAA, rejected a demanding definition for "substantially limits." *Id.* Under the expanded ADAAA, an impairment is a disability within the meaning of the ADA if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. *Id.* The KCRA, however, still follows the ADA's pre-ADAAA definition of disability, such that plaintiffs bringing a claim under the KCRA do not receive the benefits of an expanded definition of disability. *Larison v. Home of the Innocents*, 551 S.W.3d 36, 43 (Ky. App. 2018) (citing *Azzam v. Baptist Healthcare Affiliates, Inc.,* 855 F. Supp. 2d 653, 657 (W.D. Ky. 2012)). *Grainger v. Hoskin & Muir, Inc., No.* 3:19-CV-00347-GNS, 2019 U.S. Dist. LEXIS 210630, at *12 (W.D. Ky. Dec. 6, 2019).

It is undisputed that Huelett experiences these attacks one to six times a year lasting less than ten minutes per attack. [DE 24-1 at 194]. Huelett's panic attacks manifest themselves as a jabbing pain and shortness of breath. [*Id.* at 192]. Huelett does not take medicine for his panic attacks and experiences no additional symptoms. [*Id.* at 195-96]. It is further undisputed between the parties that breathing constitutes a major life activity, and trouble breathing can rise to the level of a disability. There is no genuine dispute of fact presented or alleged by either party on this issue. Numerous pre-2008 cases which apply to the KCRA claim hold that episodic panic attacks do not rise to the level of a substantial limitation. *Crowe v. TVA,* No. 1:00-CV-208, 2001 U.S. Dist. LEXIS 25244, at *12 (E.D. Tenn. Dec. 4, 2001) (sporadic panic attacks do not qualify as a disability under the ADA), *Bukta v. J.C. Penney Co.*, 359 F. Supp. 2d 649 (N.D. Ohio 2004) (panic attacks did not substantially limit breathing as they were infrequent and manageable). The undisputed record shows that Huelett may experience shortness of breath or trouble breathing for

13

at most, one hour spread out across an entire year, and possibly no more than a few minutes each year. [*Id*. at 192-195]. The Court cannot find Huelett disabled for purposes of the KCRA.

Even under the more lenient standards of the post-2008 ADAAA Huelett is unable to sufficiently show he suffered from a disability that substantially limited a major life function. In *Andrews v. Tri Star Sports & Ent. Grp., Inc*., the Sixth Circuit held that the plaintiff's asthma only prevented her from participating in a few "activities or settings," and as such she was not substantially limited in the major life activity of breathing. No. 23-5700, 2024 WL 3888127, at *5 (6th Cir. Aug. 21, 2024). Here, Huelett does not provide this Court with any documentation of this disability or its impact on his breathing, only his own brief statements on experiencing shortness of breath.  "Shortness of breath. Other than that, that's it. Just shortness of breath." [*Id*. at 192]. Huelett also states that the doctor never told him how to handle this impairment or advised him to take medication. [*Id*.]. The record is devoid of the extent to which his breathing is impaired beyond the ten minutes or less of shortness of breath one to six times a year.

This case is distinguishable from *Hostettler v. Coll. of Wooster*, where the plaintiff "had one of the worst cases of separation anxiety" that her doctor had ever seen, cried almost every time that she was in his office, did not seem like herself, required prescription antidepressants, and had trouble walking when experiencing an episode. 895 F.3d 844, 854 (6th Cir. 2018). A coworker had stated that Hostettler's conditions "limited her physically, mentally, and emotionally" and "caused her to suffer from panic attacks, difficulty breathing, and limited ability to communicate, focus, and make decisions." [*Id*.]. In contrast, Huelett infrequently experiences quick bouts of shortness of breath with no medical documentation to verify the disabilities severity or impact. Huelett is also admittedly able to wait out the attacks and immediately return to work. [DE 24-1 at 191]. *Hostettler* did not declare that all panic attacks in all degrees qualify as a disability, only that

14

one plaintiff's particularly severe set of impairments, one of which included panic attacks, substantially limited one or more life activities, and thus amounted to a disability.

Considering the above, the Court finds that no reasonable jury could determine that Huelett was substantially limited in any major life activity compared to the general population. *Williams*, 186 F. Supp. 3d at 823. Huelett's impairment does not rise to the level of a disability as it does not substantially limit a major life activity under either the pre-2008 KCRA standard, or the more lenient ADAAA standards.

### ii.    *Regarded as Disabled and Awareness of Huelett's Disability*

Although the Court has already determined that Huelett does not have a disability under the ADA or KCRA, for the sake of completeness the Court analyzes Huelett's claim that Louisville Paving regarded him as disabled, and Louisville Paving's argument that they had no knowledge of a disability. The parties argue past each other, each one arguing that the other failed to meet their burden and address the argument at issue. Louisville Paving contends that Huelett never showed that Louisville Paving had knowledge of his disability, and Huelett argues that Louisville Paving never addressed his claim that Louisville Paving regarded him as being disabled. However, both arguments revolve around what Louisville Paving knew about Huelett's impairment. *Carr v. FCA US, LLC*, No. 3:18-CV-2206, 2022 WL 992011, at *11 (N.D. Ohio Mar. 31, 2022), on reconsideration, No. 3:18-CV-2206, 2023 WL 2734640 (N.D. Ohio Mar. 31, 2023) citing *Miller v. Univ. Hosps. Health Sys*., No. 19-3788, 2020 WL 4783553, at * 4 (6th Cir. Aug. 13, 2020) ("A defendant cannot discriminate 'because of' a disability if it has no knowledge of that disability."). The parties make arguments based on the record sufficient to address both issues.

An individual is "regarded as having such an impairment" if "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or

perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Saley v. Caney Fork, LLC*, 886 F. Supp. 2d 837, 849 (M.D. Tenn. 2012) (citing 42 U.S.C. § 12102(3)(A)). The ADAAA broadly define "physical or mental impairment" as "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, [or] endocrine." 29 C.F.R. § 1630.2(h)(1). Therefore, the relevant inquiry for establishing an employee was regarded as disabled is an examination of whether the Defendant regarded Plaintiff as possessing one of the listed impairments. *Saley*, 886 F. Supp. 2d at 849.

It is undisputed that Krug made the final decision to terminate Huelett. [DE 24-13 at 385]. Krug's decision was based on an incident report written by Bentley which states Louisville Paving's "EHS department was notified of a team member in a mental health crisis at the terra apartments" and that Huelett had been found crying and barely breathing. [DE 31-7 at 465]. The record also shows a short email exchange between Krug and other managers discussing Huelett's incident and mental health. [DE 31-9]. Even when viewing these facts in the light most favorable to the nonmoving party there is insufficient evidence on the record to show that Krug perceived Huelett as being disabled or impaired. The record only indicates that Krug was aware that Huelett was experiencing some form of mental health incident and was having difficulty breathing while crying. The record does not provide evidence that Krug knew this was more than a onetime event, regarded Huelett as impaired, or even that he knew it was a medical event. See *Simpson v. Vanderbilt University*, 359 Fed. Appx. 562, 568 (6th Cir.2009) ("The facts construed in the light most favorable to [the plaintiff] support a finding only that [defendant] knew that [plaintiff] had certain health problems, but not that [defendant] regarded him as impaired."); see also *Bailey v.*

*Real Time Staffing Servs., Inc*., 543 Fed. App'x 520, 523 (6th Cir. 2013) (expressing "doubt," even under the "relaxed standard" of the 2008 Amendments, that a plaintiff who merely informs an employer of a medical condition establishes a perceived impairment such that the plaintiff qualifies as "disabled" under the ADA.). A few sympathetic and vague email exchanges and a report that states Huelett was having a mental health crisis, while also describing his brandishing of a firearm at work, are insufficient to meet even the low bar required to provide a material dispute of fact that Huelett was regarded as disabled.

Regardless, even if this Court were to find that Louisville Paving regarded Huelett as disabled and knew of his disability, the claim would still fail given Louisville Paving's legitimate nondiscriminatory justification as the court will address below. For the reasons above, the Court finds that Huelett has failed to make a prima fascia case of disability discrimination.

### 3. *McDonnell Douglas*: Legitimate Non-Discriminatory Reason

Huelett failed to make a prima fascia showing that he was disabled or regarded as disabled by Louisville paving. As such the claim fails regardless of whether Louisville Paving acted with a legitimate nondiscriminatory reason. Nonetheless, for the sake of completeness the Court will analyze the next step once a prima facie case is made, which is whether Louisville Paving establishes that it had a legitimate, nondiscriminatory reason for terminating Huelett. If Louisville Paving makes this showing, then Huelett must present evidence that would allow the jury to find that Louisville Paving's explanation is mere pretext for unlawful discrimination. *Yarberry v. Gregg Appliances, Inc*., 625 F. App'x 729, 738 (6th Cir. 2015) (quoting *Monette v. Elec. Data Sys. Corp*., 90 F.3d 1173, 1185–86 (6th Cir. 1996) (abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp., Inc*., 681 F.3d 312 (6th Cir. 2012) (en banc)). Louisville Paving argues that even if Huelett shows a prima facia case of employment discrimination, summary judgment is still

warranted as Louisville Paving had a legitimate nondiscriminatory reason for firing Huelett. [DE 24 at 172]. Louisville Paving asserts that Huelett was not fired because of his disability, but because he posed a safety threat to himself and others when he brandished his firearm and made statements that "maybe it would be better if I was not around," and "maybe I should just end it." [DE 24 at 172].

Sixth Circuit caselaw holds that "where there has been employee misconduct—including nonviolent disruptive misconduct—the employer may terminate the employee for that behavior, even if it is related to his disability." *Yarberry*, 625 F. App'x at 740. In particular, "violent, threatening, or safety-related behavior resulting from a disability need not be tolerated by employers 42 U.S.C. § 12113(a), (b)." *Id*. (quoting *Den Hartog v. Wasatch Academy*, 129 F.3d 1076 (10th Cir. 1997)). Louisville Paving alleges that Huelett was fired because he brandished a firearm [DE 24-1 at 227; DE 24-1 at 212] and repeated the phrases "maybe it would be better if I was not around," and "maybe I should just end it" twice in the presence of co-workers. [DE 24-2 at 220]. There is some dispute on the record as to what Huelett said and the context, however he acknowledges in his affidavit that Lewis may have heard him say "end it" in regard to ending his relationship with his wife. [DE 31-1 at 401]. There is however no genuine dispute that Huelett handled or brandished his firearm. The testimony of multiple individuals, including Huelett, as well as medical records and reports from the day confirm Huelett grabbed and moved his firearm during the event in question. [DE 24-1 at 212; DE 24-2 at 212, 216, 227-30; DE 31-2 at 425].

Huelett's handling of the firearm alone would be sufficiently threatening, and cause concern for workplace safety sufficient to qualify as a legitimate nondiscriminatory justification for his firing. This is further strengthened by the statements made immediately prior regardless of the dispute over their context. See *McNamara v. Gen. Motors*, LLC, 189 F. Supp. 3d 685, 697

(N.D. Ohio 2016) (finding a legitimate nondiscriminatory cause where an employee engaged in threatening behavior towards coworkers, even when he denied directly making threats). The court in *Yarberry* found a legitimate nondiscriminatory justification in a very similar case, where a worker's manic episode caused him to enter his workplace after hours, open a safe without taking anything, and use store equipment without permission. *Yarberry*, 625 F. App'x 740. Even though the behavior in *Yarberry* was "non-violent and occurred only once," the court found legitimate nondiscriminatory reasons for his firing. *Id*. Here, "the specific conduct at issue" is of a more severe and threatening nature, and the Court finds a legitimate nondiscriminatory justification for Huelett's firing regardless of the existence of a company policy.

### 4. Mere Pretext

To establish pretext, a plaintiff will usually need to show "that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Risch v. Royal Oak Police Dep't*., 581 F.3d 383, 391 (6th Cir. 2009) (internal quotation marks omitted). A plaintiff "may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Id*. "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). As such, to survive summary judgment a Plaintiff must offer evidence which "call[s] into question the veracity of" the employers explanation. *Rufo v. Dave & Busters, Inc*., 2007 WL 247891 at *4 (6th Cir. 2008). An employer's own speculation, unsupported by fact, is not enough to establish pretext. *Upshaw v.*

*Ford Motor Corp.*, 576 F.3d 576, 587 (6th Cir. 2009). Nor is "mere conjecture that the employer's explanation is a pretext for discrimination a basis for denying summary judgment." *Id.*

In his response brief Huelett does not explicitly address pretext. Huelett does make multiple brief arguments under a mixed motive framework that he indicates could show the firing was pretextual. [DE 30 at 326]. First, Huelett argues that the testimony of Louisville Paving's witnesses varies so wildly that a jury could reasonably conclude Huelett was only fired because of his mental illness. However, the Court finds that there is no material dispute of fact as to Huelett's handling of the firearm, and what little dispute exists about his statements are immaterial differences. Second, Huelett contends that the decision maker in his termination improperly considered his mental illness in his termination and did not know that Huelett had touched a firearm when he made this determination. Huelett's arguments are not sufficiently compelling. First, arguing mixed motive is off point, instead, Huelett must show mere pretext under the *McDonnell Douglas* test. Second, Krug, the decision maker for Louisville Paving was aware of Huelett's handling of a firearm as exhibited in both his emails with fellow managers and the incident report he relied on in making his decision. [DE 31-6 at 463; DE 31-7 at 465].

While arguing a direct evidence approach, Huelett asserts that Lewis was a non-disabled individual engaged in substantially identical conduct to Huelett but was not fired by Louisville Paving. [DE 30 at 342]. Although Huelett does not argue for this as pretext, because it can serve as a pretext argument the Court will consider it. When a Plaintiff seeks to show pretext on the ground that the proffered reason did not actually motivate, or was insufficient to motivate, the adverse action, they may offer "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Russell v. Univ. of Toledo*,

537 F.3d 596, 607 (6th Cir. 2008). The determination of whether someone is "similarly situated" entails a comparison of co-workers who dealt with the same supervisor, were subject to the same standards, and engaged in like conduct. *Id.*; *Calandriello v. Tennessee Processing Ctr., LLC*, No. 3:08-1099, 2009 WL 5170193, at *9 (M.D. Tenn. Dec. 15, 2009).

Huelett argues that his firing was pretextual because his coworker Lewis accosted him and violated company policy that states "[e]mployees should not place themselves in peril, nor should they attempt to intercede during an incident." [DE 31-22 at 651]. However, the conduct in these incidents is nowhere near "substantially identical conduct." Even if both violated polices, the underlying conduct and the actions taken were different. Huelett's argument that his firing was pretextual because Lewis "accosted him" and was not fired fails. Huelett made alarming statements heard by his coworkers and then grabbed and brandished a firearm, Lewis intervened, grabbing his hand to stop what he presumed to be potentially dangerous conduct to Huelett and others. [DE 24-2 at 230]. Huelett is unable to carry his burden and show that his firing was mere pretext. Louisville Paving's motion for summary judgment is **GRANTED as to Count Two**.

**B.    Count Three: Retaliation under the ADA and Ky. Rev. Stat. § 344.280**

Huelett asserts that Louisville Paving unlawfully retaliated against him under both the ADA and Ky. Rev. Stat. § 344.280 for seeking disability accommodations for his panic attacks. Huelett raises the same complaint under both the ADA and Ky. Rev. Stat. § 344.280, claiming he requested a lawful accommodation when he went with EMS to receive medical treatment. Louisville Paving argues that Ky. Rev. Stat. § 344.280 protects against a narrow range of protected activities that does not include a request for accommodations, and that both claims fail because Huelett never requested an accommodation.

Under Kentucky Revised Statute 344.280, it is unlawful for a person, employer or otherwise to;

> retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter.

Ky. Rev. Stat. § 344.280. Kentucky courts have held that a prima facie case of retaliation requires a plaintiff to demonstrate "(1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Christopher v. Stouder Mem'l Hosp.,* 936 F.2d 870, 877 (6th Cir. 1991), *cert. denied*, 502 U.S. 1013 (1991). The ADA requires the same process but with an expanded scope of protected activity.

In their filings both parties briefed the question of whether a request for accommodations constituted protected activity under Ky. Rev. Stat. § 344.280. Huelett argues that Ky. Rev. Stat. § 344.280 protects activity beyond merely opposing an unlawful practice or filing a complaint. Louisville paving insists that Ky. Rev. Stat. § 344.280 protects only the limited claims express in the statutes text. However, this Court does not have to address this unresolved issue of state statutory interpretation unless the Court finds that Huelett requested an accommodation. As this issue is determinative of both the ADA and Ky. Rev. Stat. § 344.280 retaliation claim, the Court will address this issue first.

Employees bear the initial burden of requesting an accommodation, but they are entitled to some "flexibility in how they request [it]." *King*, 30 F.4th at 564 (internal citations and quotations omitted). There are no "magic words" employees must invoke to inform their employer of their disability or to request an accommodation. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 419 (6th

Cir. 2020). An employee does not have to "explicitly use the word 'accommodation'" in requesting an accommodation and need not "identify the perfect accommodation from the start." *King*, 30 F.4th at 564 (internal citations and quotations omitted); *Penney v. Heatec*, Inc., No. 1:24-CV-00009-DCLC-SKL, 2024 U.S. Dist. LEXIS 177377, at *6-7 (E.D. Tenn. Sep. 30, 2024). But, the employer's request for accommodation must still make clear the accommodation is being requested because of the employer's disabilities, and "[t]he employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Woodie v. Motorola Sols., Inc*., No. 1:22-CV-00324, 2024 U.S. Dist. LEXIS 37195, at *10 (S.D. Ohio Mar. 4, 2024) (quoting *Gantt v. Wilson Sporting Goods Co*., 143 F.3d 1042, 1046-47 (6th Cir. 1998)). In other words, the employee's intent to request an accommodation must be clear from the context. *Epley v. Walgreens Co*., 2019 U.S. Dist. LEXIS 175057, at *17 (E.D. Tenn. Oct. 9, 2019).

There is no dispute of fact between the parties as to the events surrounding Huelett's supposed accommodation request, only a disagreement of law as to whether a request was actually made. Huelett claims the request was made when he went with EMS to receive medical care. The record is clear that Huelett never asked for medical treatment or EMS, it was Bentley who called EMS, and Bentley who "told [Huelett] that [he] had to go to the hospital and get checked out." [DE 24-1 at 202]. In fact, according to Huelett's own testimony he not only did not request an accommodation, but initially resisted and did not believe it to be necessary at all, stating that at several points on the record that "[EMS and Bentley] kept trying to get me to go to the hospital, and I told them I was fine, I wasn't going," [*Id*. at 204, 205], and "I could have drove myself to get checked out, but I didn't feel -- I didn't think I needed to be checked out" further indicating that his property was not taken from him by force. [*Id*. at 207]. It also took some persuading to

convince him to go, as evidenced by his own statement that "[i]t was probably an hour before they actually -- before I actually agreed to let them take me." [*Id*. at 207]. The Court cannot find that a request for accommodations was made when Huelett never requested medical care and actively insisted he did not need it. The Sixth Circuit has previously held that employers are not required to speculate as to an employee's need or desire for accommodations, and to find Huelett had made a requested accommodation would be requiring Louisville Paving to not only speculate but ignore the express statements of Huelett himself. *Wilson Sporting Goods Co*., 143 F.3d at 1046-47.

An employer cannot be held liable for retaliation if an accommodation request was never made. *Melange v. City of Ctr. Line,* 482 F. App'x 81, 82 (6th Cir. 2012) (An employer did not unlawfully retaliate for seeking accommodations as they had not received a request for reasonable accommodation prior to notifying the employee of his termination.). The Court finds that there is no material dispute that Huelett never requested an accommodation. Both of Huelett's retaliation claims fail as a matter of law, and since this Court can resolve this claim without interpreting an unresolved question of state law it will not weigh in on the interpretation of the Ky. Rev. Stat. § 344.280 unnecessarily. Louisville Paving's motion for summary judgment is **GRANTED as to Count Three**.

## C.    Count Four: Trespass to Chattels

Huelett alleges that Louisville Paving caused their agents to "intermeddle in his property with possessory interest" when they touched, took, and manipulated, his firearms and car without his consent. [DE 1-2 at 15]. Louisville Paving argues that there was not trespass as there is no genuine dispute to the fact that Huelett consented to the movement of his property, that the property was not damaged by Louisville Paving or their agents, and that Huelett was not dispossessed of

24

his property for a substantial period. [DE 24 at 181-82]. Huelett denies that he consented to the movement of his property but fails to cite to articulable facts on the record to dispute this claim.

Kentucky State Court's rely on the Second Restatement of Torts to outline the elements of a trespass to chattels claim. *Ingram Trucking, Inc. v. Allen*, 372 S.W.3d 870 (Ky. Ct. App. 2012) (citing Restatement (Second) of Torts: Trespass to Chattel § 217 (1965)). Under the Restatement and Kentucky Law, trespass to chattels requires a showing that a defendant intentionally (1) dispossessed another of the chattel or (2) used or intermeddled with a chattel in the possession of another. *Madison Cap. Co., LLC v. S & S Salvage,* LLC, 765 F. Supp. 2d 923, 935 (W.D. Ky. 2011) (citing Restatement (Second) of Torts § 217 (1965)). Under the Second Restatement, an individual "who would otherwise be liable to another for trespass to a chattel or for conversion is not liable to the extent that the other has effectively consented to the interference with his rights." Restatement (Second) of Torts: Trespass to Chattel § 252 (1965). Following the Restatement, Kentucky law provides that "that consent is a complete defense to a claim for trespass to chattels." *Ronald A. Chisholm, Ltd. v. Am. Cold Storage, Inc*., No. 3:09-CV-00808-CRS, 2013 U.S. Dist. LEXIS 117709, at *15-16 (W.D. Ky. 2013).

Louisville Paving argues that there is no genuine dispute of fact regarding Huelett's consent to temporarily relinquish his property. During his deposition, when describing how Louisville Pavement's employees took possession of his car and the firearms inside, Huelett was stated that "[James Bentley] asked for the keys" and when asked if he gave Bentley the keys, responded "Yeah, I gave [James Bentley] the keys." [DE 24-1 at 208]. Huelett also knew why and where they were going to move his car, "[t]hey was going to move my car to the shop, is what he said, where it would be inside the gated part over there" so that nobody could break in and steal things. [*Id*]. Huelett's car was not blocked in, and no one had taken his keys or impeded him in any other way

[*Id*. at 422-23]. The record also indicates that Huelett willingly informed Bentley that he possessed other firearms and showed him where they were stored while waiting on EMS. [DE 31-2 at 416].

Huelett's statement that he "had to go" to the hospital does not provide a genuine dispute of material fact as to consent to relinquish his property. Nor does the statement in Huelett's affidavit where he claims his keys were taken from him by Bentley. [DE 31-1 at 401]. Huelett himself consistently testified in his deposition that he agreed to go to the hospital and gave up his keys on request, and Huelett can cite to no facts in the record that support his keys being taken. [DE 24-1 at 208]. The Court cannot find a material dispute of fact when the dispute arises in an affidavit filed after the motion for summary judgment, and explicitly contradicts *Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003). Further, there are no articulated facts on the record that would allow the Court to infer that he was forced to the hospital by Louisville Paving instead of merely persuaded. At this point the record also indicates it was not just Bentley telling Huelett he should get checked out, but EMT's as well. [DE 24-1 at 205-06; DE 31-2 at 421]. Huelett states "I could have drove myself to get checked out, but I didn't feel -- I didn't think I needed to be checked out" further indicating that his property was not taken from him by force. [DE 24-1 at 207]. Furthermore, whether or not he was forced to go to the hospital is not a material fact, only whether or not he consented to having his property moved by Louisville paving, which is a separate issue that the Court finds no material dispute of fact.

In short, the Court finds no genuine dispute of material fact regarding Huelett's consent for Louisville Paving to move his property that would make this an issue triable to a jury. Consent is a complete defense to trespass to chattels under the Second Restatement and Kentucky law. Thus, Huelett's trespass to chattels claim fails and the Court need not address the issue of substantial

time or harm caused by the trespass. Louisville Paving's motion for summary judgment is **GRANTED as to Count Four**.

## IV.     CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS**:

1. Huelett's Motion to Exceed the Page Limit of Local Rule 7.1 [DE 29] is **GRANTED**.

2. Louisville Paving's Motion for Summary Judgment [DE 24] is **GRANTED** on all counts.

3. The Court will enter separate judgment.

Rebecca Grady Jennings, District Judge
United States District Court

February 19, 2025